Opinion of the court delivered by
Judge Haywood.
The bill states, that in 1816, Centre was indebted to, *75 Allison two thousand dollars; that he, Centre, owned a _ i n/r • tract of land in Overton county, and negro Morris, ot whom he had had the possession for eight or nine years before. On the 20th of July, 1816, he conveyed the land and negro to Porter in trust, for the use and benefit of Allison; and he was authorized by the deed to sell the land and negro, if the two thousand dollars should not be paid by the first of December, 1816; Centre to continue in possession of the land till requested to give it up by the purchaser,in case of a sale, but was to deliver the negro to Porter in a few days after the contract was executed. The proceeds of the sales were to be paid to Allison. The surplus money above the two thousand dollars to be paid by the trustee to Centre. Centre was in the act of removing the negro to be delivered to Porter, when W. Armstrong got possession of him, and hath ever since kept him, and claims the negro as his own, and refuses to deliver him into the possession of Porter. The land was sold for eight or ten dollars, and Allison became the purchaser. The land is worth five hundred dollars, if the title were indisputable, which, however, the complainants think doubtful. They are yet willing, and have offered Centre, the liberty of making a disposition of the land himself, paying over the proceeds to Allison. They wish to dispose of the land and negro for discharging the debt, and Centre is insolvent. Armstrong holds the negro, and there is a collusion between him and Centre to defraud Allison. In order to defrud Allison, Armstrong pretends that Morris was loaned by Armstrong to Centre eight or nine years ago, on the marriage of Centre with Armstrong’s daughter, and that the property in said negro, still continued in Armstrong. The bill alleges, that Armstrong gave the negro to Centre, by an advancement to his daughter, the wife of Centre, and that ever since, the negro remained in the possession of Centre, was his absolute property, and was so recognized by Armstrong himself for the last six or seven years. The bill prays a decree for the delivery of the negro to the complainants to be disposed of agreeably to the deed of trust, and for gen *76 eral relief. The answer of Armstrong states, that Cen- ^ mame(j jj[S daughter, to whom he wished to give a negro girl, but not having one to give, he concluded to lend the boy Morris to Centre and his daughter, until he could procure a girl 13 or 14 years of age, and he delivered the boy in presence of two witnesses, upon the express condition, that Centre should have his services till the defendant, Armstrong,could procure the girl; and the services of Morris then to be at his disposal. This was known to all the family and others. In 1812 or 1813, he procured the girl and gave her to Centre absolutely. He still suffeied Morris to remain with Centre to assist him in clearing a piece of new ground; and Morris continued to remain with Centre until 1816; when the defendant, Armstrong, again took him into his possession.
Centre’s answer agrees with the statements made by Armstrong; and says further, that he has paid to Allison all that he owed him, and five hundred dollars more; and that there is enmity between himself and Armstrong, which has existed ever since the deed of trust to Porter was executed.
The facts proved, substantially support the answer, and appear tobe, that the negro was put into the possession of Centre by Armstrong, in January 1810; the girl was delivered in 1813. The trust deed was made in July 1816; and the negro, Morris, continued with Centre till a few days afterwards, when he came into the possession of Armstrong. If Armstrong be at all culpable, it was in suffering the negro to remain with Centre, after the girl was delivered to him in 1813, in Roane county, to which county he had removed from Hawkins or Grainger. Thence he removed into the county of Overton; it is not stated precisely at what time, but probably in 1814. Before the delivery of the girl, Armstrong had no power over the boy. He could not have taken possession of him. He had promised a girl upon marriage, and had agreed that the boy should remain with Centre, until she should be delivered; taking the whole five years together that intervened between the marriage and the date of the *77 trust deed, in July 1816, is the case then brought within the act of 1801, ch. 25, sec. 2, which says, “where any loan of goods and chattels shall be pretended to been made to any person, with whom, or those claiming under him, possession shall have remained by the space of five years without demand made and pursued by due process of law, on the part of the pretended lender; or where any reservation, or limitation, shall be pretended to have been made of a use of property, by way of condition, reversion, remainder or otherwise, in goods or chattels, the possession whereof shall have remained in another, as aforesaid, the same shall be taken as to the creditors and purchasers of the persons aforesaid, so remaining in possession, to be fraudulent within this act; and that the absolute property is with the possession, unless such loan, reservation, or limitation of use or property, were declared by will or by deed, in writing, proved and recorded as aforesaid.”
The third section enacts, “that this act shall not extend to any estate, or interest in any lands, goods or chattels, or any rents, common or'profits out of the same, which shall be upon good considerátion, and bona fide lawfully conveyed or assured to any person or persons, bodies politic or corporate, or to any person lending Ms own property, without an intent to defraud.”
The last clause in this act saves a case from its operation, if the fraud was not intended, which, but for these words, would have been within the act, and forms a plain distinction between eventual frauds, which are so without intention, and those which are so with intention. Is this a fraud eventually with an intention on the part of Armstrong to enable Centre to commit it? There is no part of the evidence which points to any such intention. Did he intend to give a false credit, when he let the boy remain in the possession of Centre, till the girl should be obtained ? He called witnesses to testify the terms of Centre’s possession. He often declared them to others; and so did Centre, and he actually performed his contract, by delivering the girl. Could he have sued Centre at any time *78 within three years, during which he had not yet procured the girl? No, certainly; for by contract he was not to re-gume possession till the girl should be procured and de-]¡vere(}, The five years possession must be one which the lender could put an end to by suit; an indefinite possession depending on the will of the lender; not one founded upon contract, which could not be put an end to at pleasure by the lender. For three years of this five years, the possession was not one which could be determined bj suit, if indeed Armstrong was a lender, and therefore, cannot be reckoned as part of the five years which this act contemplates, namely, during which the continuance of possession was wholly attributable to the abstinence of the lender; whence may justly arise a presumption, that the property itself is relinquished as well as the possession, upon which presumption creditors as well as others may act. From the end of these three years, five have not elapsed, and so the case is not within the act of 1801, ch. 25, for want of the full five years. Armstrong was a lender during two years only, or between two and three. Bills of sale or deeds of gift, are required to be made and registered by the acts of 1784 ch. 10, sec. 7, and 1789 ch. 56, and by subsequent acts, for giving further time, to the end that the property alleged to be conveyed may at the instance of creditors be still considered as belonging for their benefit to the former owner, and to be seized as his, for the satisfaction of creditors. With the same view is all the former part of the section, 1801 ch. 25, sec. 2, which does not relate to loans. With the same view is the act of 1715, ch. 38, and the acts of the 13th and 27th ofElizabeth. The questions raised by them are, whether or not the former owner is still owner, notwithstanding the appearances which are to the contrary. But the act of 1801, so far as it relates to loans, raises the question whether the possessor is not the owner, and whether the former owner is not to be considered as Having divested himself of the property? Under the acts of Elizabeth, and of 1715, and of 1801, creditors resort to the former *79 owner notwithstanding his conveyance to a third person; under the act of 1801 they resort to the receiver on loan, unless the former owner put an end to his possession in sonable time, or make public his continuing ownership by a deed registered. The property so situated may be sold as the possessor’s, for his creditors, because of five years possession, andiialso by the creditors of the former owner, for as between him and the possessor, the contract remains as it originally was. The creditors then who insist to sell the property of the lender to satisfy debts of the possessor, should show clearly that it was the intent of the lender, to draw in, and deceive by false pretences. Armstrong assisted his daughter with the services of Morris till he could provide a girl for her. Was it lawful to do this? Does the doing of it imply an intent to deceive creditors, either present, past or future? Was it necessary to make known by deed and registration in less than five years? Is not here a contract and not a loan? As well might it be said that a negro hired for five years, and remaining in possession should for want of a deed be sold by the creditors of the possessor. Does the act require a deed, when the possession is to be discontinued, and is actually discontinued within five years? Here are not five years during the whole of which time the lender failed to bring suit when he might have brought suit; and to put an end to the possession, when he might have put an end to it. Here is a possession upon valuable consideration, if not of marriage, at least of a contract valid in law; and here is a possession put an end to within the time required after the first period, when it was in the power of the lender to put an end to it. There was no intention of fraud, but only an-intention in William Armstrong to perform a duty of moral obligation. This case is not within the act of 1801 ch. 25, nor is it within the acts of Elizabeth, the act of 1715 or the act of 1789, for the reasons before given. Is it within any common law principle which so favors the creditors of Centre, as to take the property of Armstrong for his satisfaction, and to that end considers Armstrong as a fraudulent doer? It *80 is easy to be perceived how a fraud vitiates a deed, if con-yeyance 0f any sorj; }je made by A to B, and so prevents the property from passing to B. But it looks a little new, to make the fraud of A have the powerful effect of actually conveying the property from him to B. Property longgremaining with a son or daughter, may vest in him or her: the circumstances raise a presumption that it was a gift ab origine. But here the attempt is, not to make it a gift ah origine, but only from the' end of five years; and not then as between the father and son, but for the benefit of creditors, who have believed as they say, that the property in possession was the property of the possessor; their debts contracted too probably liefore the expiration of the five years. They, it is argued, ought to have had notice by deed and registration, that the possession was fiduciary, and that the interest of the holder was only as an occupant. For this notice the creditors were to look to the Register’s office of the county, where the chattels were at the time of the contract made, or possession given. The claim of the creditors of Centre, is founded upon the neglect and criminal intent of Armstrong, and upon his fraudulent conduct towards them. The circumstances generally relied on in such instances, is, that the possession is indefinite; that the holder sold part of the property, with the knowledge, and without the disapprobation of the lender; that he removed them to a distance; held them out to the world as his own, and continued so long in possession as to render the supposition at least very probable. Here he did not sell part, nor offer to sell, with the knowledge of Armstrong; and though he removed to a distance, the negro was still understood by officers and others, to belong to Armstrong, and he continued only two years in possession after the time when the negro was demandable by Armstrong, and the possession was not indefinite, but limited by contract. Upon common law principles, this is no more a fraud in Armstrong, than it is by statute. He intended no fraud. He intended to assist his daughter in need. He never withheld information of what was the real state of the trails- *81 action. He lived some time at Centre’s, and for a considerable time at no great distance. And as to the removal of Centre, he could not prevent the removal of the negro at his pleasure, as might have been done in the instance we are thinking of. At least, Armstrong could not have prevented such removal at any time prior to the delivery of the girl. The creditors might have applied to prove the real situation of this negro. They did not do so. They were more negligent than him, and more liable to suspicion than his conduct was. We must not lay it down, that a father cannot help his daughter without the sacrifice of his property to strangers. Mankind must be allowed, notwithstanding the greediness of creditors, to perform the most natural of all duties, and the most grateful to the feelings of a good heart, without incurring the loss of their property appropriated to a child’s support. And when we are called upon to believe that Armstrong’s intent was not to perform this duty, but under pretence thereof, that his intent was to raise a false credit for his son-in-law, and to defeat creditors of their just debts, it is unnatural to believe the position; and therefore much clearer proof is required than has been adduced in this case.
Dismiss the complainant’s bill with costs..